ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE) Recurrido<br><br>v.<br><br>EDUARDO CRUZ RÍOS Y OTROS Peticionario | TA2026CE00133 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: BY2019CV03165<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparecen ante nosotros, el Sr. Eduardo Cruz Ríos, su esposa Evangelista Aponte Rivera y la sociedad de gananciales compuesta por ambos (Peticionarios). En su recurso, solicitan que revoquemos el dictamen que notificó el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 3 de febrero de 2026, en el cual denegó su *Moción informativa y en solicitud de remedio provisional.*

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.*

## I.

Surge del expediente que, el 11 de junio de 2019, el Banco Popular de Puerto Rico (Banco Popular) instó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de los Peticionarios. Según alegó el Banco Popular, los Peticionarios incumplieron con los términos de un préstamo otorgado entre las partes, el 21 de septiembre de 2004. Luego de varias incidencias procesales que resulta innecesario pormenorizar, el 12 de julio de

2022, el foro primario notificó una *Sentencia* mediante la cual anotó la rebeldía a los Peticionarios y los condenó al pago de $55,146.02 por concepto de principal, más intereses y honorarios de abogado.

Debido al incumplimiento de los Peticionarios con el referido dictamen, el 23 de agosto de 2022, el Banco Popular solicitó la ejecución de la sentencia y la enmienda del epígrafe a los fines de incluir al Federal National Mortgage Association (Fannie Mae) como parte demandante y como tenedor de buena fe, en sustitución del Banco Popular.

A esos efectos, el 24 de agosto de 2022, el TPI emitió una *Orden* y expidió el *Mandamiento de Ejecución de Sentencia* dirigido al Alguacil para la correspondiente venta en pública subasta del inmueble localizado en el Solar 98 Bloque R de la Urbanización Bella Vista Gardens, Barrio Buena Vista, del Municipio de Bayamón, Puerto Rico 00956, objeto de esta causa de acción. A tan solo un día de la celebración de la subasta, los Peticionarios solicitaron al TPI dejarla sin efecto y que les permita completar el trámite de "Loss Mitigation" con el fin de retener su propiedad.[1]

No obstante lo anterior, el 6 de diciembre de 2022, el TPI celebró la subasta, producto de lo cual, la propiedad le fue adjudicada al Sr. Jeremy Ortiz Berríos (Sr. Ortiz Berríos), por la suma de $124,101.00.[2] Publicado el edicto de subasta y cumplidas las formalidades de rigor, el 24 de agosto y el 14 de septiembre de 2023, el foro primario notificó la *Orden de Lanzamiento* y el *Mandamiento* de lanzamiento dirigido al Alguacil Regional, respectivamente.

En respuesta a una moción urgente de los Peticionarios, en la cual expresaron poder entregar $165,000.00 en calidad de compra

---

[1] Entrada Núm. 50, SUMAC TPI. Observamos que, en múltiples escritos de los Peticionarios comparece, además, la Sra. Marisol Cruz Ríos, hermana del Sr. Eduardo Cruz Ríos.
[2] Mediante una *Orden,* notificada el 7 de diciembre de 2022, el TPI denegó la solicitud de los Peticionarios. Entrada Núm. 56 en SUMAC TPI.

del referido inmueble, el foro primario paralizó el lanzamiento programado para el 4 de diciembre de 2023, como medida cautelar.[3]

Continuados los procedimientos de lanzamiento a solicitud de Fannie Mae y del Sr. Ortiz Berríos -como interventor-, los Peticionarios instaron una *Urgente moción sobre consignación,* el 15 de febrero de 2024, de la cual se desprende que, aunque el Sr. Ortiz Berríos aumentó el precio de venta a $172,600.00,[4] consignaron el monto originalmente ofrecido de $165,000.00. Al mismo tiempo, solicitaron paralizar el lanzamiento a modo de prórroga para los Peticionarios completar el dinero restante. Luego del foro primario paralizar nuevamente el lanzamiento, el Sr. Ortiz Berríos solicitó tomar conocimiento de que el precio de venta asciende a $175,000.00, tras añadirle tres meses adicionales de renta (enero, febrero y marzo de 2024), a razón de $800.00 cada uno.[5]

A esos efectos, el TPI concedió a los Peticionarios hasta el mes de marzo de 2024 para conseguir el balance pendiente y dejó sin efecto el lanzamiento. Al cabo de más de un (1) año sin los Peticionarios acreditar cumplimiento, el 7 de julio de 2025, el Sr. Ortiz Berríos presentó una *Moción para que se deje sin efecto acuerdo de venta, se permita consignar dinero y la continuación del lanzamiento.* Solicitó al foro primario dejar sin efecto el acuerdo de venta, que ordene el lanzamiento de los Peticionarios y que le permita descontar de la cuantía originalmente consignada el equivalente a ocho (8) meses de renta, gastos legales y la contribución sobre ingresos municipales, lo que reduciría la cuantía originalmente consignada a $152,546.89.

Evaluado lo anterior, el foro primario declaró ha lugar a la moción del Sr. Ortiz Berríos y, el 9 de julio de 2025, notificó una

---

[3] Entrada Núm. 70 en SUMAC TPI.
[4] Según el Sr. Ortiz Berríos, el nuevo precio de $172,600.00 se desglosa en el precio original de $165,000.00, más $5,600.00 por concepto de renta a razón de $800.00 mensuales para los meses de mayo a diciembre de 2023 y $2,000.00 en honorarios de abogado.
[5] Entrada Núm. 82 en SUMAC TPI.

*Orden de Lanzamiento* en contra de los Peticionarios. Luego de varios intentos infructuosos de los Peticionarios dirigidos a que el foro primario reconsidere la orden de lanzamiento, el 30 de enero de 2026, instaron una *Moción informativa y en solicitud de remedio provisional,* con el ulterior propósito de que el foro primario tome conocimiento de su propuesta para crear "una servidumbre de paso y la eventual construcción de una vivienda en la finca posterior". A esos efectos, los Peticionarios reiteraron su solicitud de suspensión del lanzamiento e imploraron un término razonable para finalizar las correspondientes gestiones administrativas y municipales.

En atención a lo anterior, el 3 de febrero de 2026, el TPI notificó la *Orden* impugnada a través de la cual proveyó no ha lugar a lo solicitado. Hizo constar en su pronunciamiento que "[e]l caso es de ejecución de hipoteca. La controversia sobre la servidumbre deberá ser atendida en otro procedimiento."[6]

Inconforme, el 4 de febrero de 2026, los Peticionarios acuden ante esta Curia mediante el recurso de epígrafe y le imputan al foro primario lo siguiente:

> Erró el Tribunal de Primera Instancia al resolver que la controversia relacionada con la servidumbre debía atenderse en otro procedimiento, excluyéndola del caso de ejecución de hipoteca, en violación al debido proceso de ley, a los principios de economía procesal y al ejercicio equitativo de su jurisdicción, particularmente cuando dicha determinación conlleva un lanzamiento inmediato y daño irreparable.

Coetáneamente, los Peticionarios acuden ante el TPI para notificar la presentación del recurso de *Certiorari* ante el Tribunal de Apelaciones y para solicitar al foro primario paralizar el lanzamiento pautado. Resultado de lo anterior, el 5 de febrero de 2026, el TPI emitió una *Orden* en la cual expresamente dispuso "[s]e paraliza el lanzamiento por tercera ocasión."[7]

---

[6] Entrada Núm. 131 en SUMAC TPI.
[7] Entrada Núm. 136 en SUMAC TPI.

En cumplimiento con nuestra *Resolución,* el Sr. Ortiz Berríos comparece y se opone al recurso de epígrafe. Arguye que, se trata de otro intento de los Peticionarios por detener el lanzamiento. Nos refiere a su *Moción en Oposición a Reconsideración*[8] instada ante el TPI en donde detalló el historial de incumplimientos de los Peticionarios. Identifica cuatro (4) dictámenes del foro primario decretando la paralización de las órdenes de lanzamiento[9] y asegura ser el dueño registral del inmueble objeto de esta causa. De conformidad, solicita la continuación de los procesos de lanzamiento.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. Expedición de la Petición de *Certiorari* post sentencia**

Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones, mediante auto de *certiorari. Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847 (2023). El recurso de *certiorari* es un auto procesal extraordinario, por el cual, un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* supra.

Las Reglas de Procedimiento Civil establecen que, el Tribunal de Apelaciones expedirá el recurso de *certiorari,* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez,* supra. En ese sentido, el auto de *certiorari* es limitado y excluye aquellas

---

[8] Entrada Núm. 106 en SUMAC TPI.
[9] Entradas Núm. 71, 79, 86 y 136.

determinaciones interlocutorias que, pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG,* 205 DPR 163 (2020). El delimitar la revisión, a instancias específicas, tiene como propósito evitar la dilación que causaría la revisión judicial de controversias, que, pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp., et al.,* 202 DPR 478 (2019).[10] A tenor de la Regla 11(C) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, cuando la citada Regla 52.1 impida expedir el auto de *certiorari,* procede denegar su expedición.

Ahora bien, la Regla 52.1 de Procedimiento Civil de 2009, *supra,* establece excepciones que permiten la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia. *800 Ponce de León v. AIG,* supra.

Como puede observarse, la Regla citada no contempla los **dictámenes posteriores a la sentencia**, por lo que, al determinar si procede la expedición de una petición de *certiorari,* el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 de nuestro Reglamento, *supra*; *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023).

De imponerse las limitaciones de la Regla 52.1, *supra,* a la revisión de dictámenes post sentencia, tales determinaciones inevitablemente quedarían sin posibilidad alguna de revisión apelativa. *BPPR v. SLG Gómez-López,* supra. En tal sentido, es

---

[10] Citando a *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2017).

preciso enfatizar que, si bien el auto de *certiorari* es un mecanismo procesal discrecional, dicha prerrogativa del foro revisor no debe hacer abstracción del resto del derecho. *Mun. de Caguas v. JRO Construction,* supra.

Cabe destacar que, el examen que hace este Tribunal, previo a expedir un auto de *certiorari,* no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra.* Véase, además, *Mun. de Caguas v. JRO Construction,* supra. A fin de que, este Tribunal pueda ejercer su discreción de manera prudente, la Regla 40 del Reglamento de Apelaciones, *supra*, establece los criterios que deberán ser considerados, al determinar si procede o no expedir un auto de *certiorari.*[11] Los referidos criterios establecidos en la citada Regla 40 son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Como ya indicamos, los principios antes transcritos, nos sirven de guía para poder determinar si procede o no intervenir en el caso, en la etapa del procedimiento en que este se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De esta manera, el foro apelativo deberá ejercer su facultad revisora, solamente en aquellos casos en que se demuestre que el dictamen

---

[11] Véase, *Mun. de Caguas v. JRO Construction, supra,* pág. 712.

emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López,* supra.

**III.**

En su recurso, los Peticionarios cuestionan el dictamen interlocutorio del foro primario mediante el cual se negó tanto a paralizar la orden de lanzamiento y como a atender la propuesta sobre servidumbre que plantearon los Peticionarios como remedio provisional. Por su parte, el Sr. Ortiz Berríos se opone y arguye que la intención de los Peticionarios es detener el proceso de lanzamiento mediante argumentos improcedentes.

Cabe recordar que, en el presente caso, el TPI notificó una *Sentencia* en rebeldía, el 12 de julio de 2022, en la cual condenó a los Peticionarios al pago del principal, intereses y honorarios y, ante su incumplimiento con lo antes, posteriormente ordenó la ejecución de dicha sentencia. Como parte de su ejecución, el inmueble objeto de este pleito fue vendido en pública subasta al Sr. Ortiz Berríos. Este último, como titular registral del inmueble en cuestión, solicitó el lanzamiento de los Peticionarios quienes ocupaban su propiedad.

Luego de múltiples incidencias procesales a lo largo de tres (3) años desde que fue notificada la *Sentencia* en rebeldía, entre ellas, al menos (3) posposiciones a las órdenes de lanzamiento, el foro primario se negó a posponer el lanzamiento por entender que los remedios provisionales que propusieron los Peticionarios, relacionados a una servidumbre de paso, no eran materia de este pleito sobre cobro de dinero y ejecución de hipoteca.[12]

Realizado el análisis del expediente ante nos, a la luz del derecho aplicable, determinamos denegar la expedición del auto solicitado. Los Peticionarios no nos han puesto en posición de hallar un fundamento jurídico para dejar sin efecto el dictamen

---

[12] La posposición del lanzamiento que actualmente subsiste surgió luego de que el TPI advino en conocimiento de la presentación de este recurso ante esta Curia, y según solicitado por los Peticionarios.

interlocutorio impugnado, en ausencia de un error manifiesto, arbitrariedad, prejuicio o parcialidad. Tampoco identificamos criterio alguno que nos obligue a intervenir con el dictamen recurrido para evitar un fracaso de la justicia. Al amparo de los principios para la expedición del auto de *certiorari* que dispone la Regla 40 de nuestro Reglamento, *supra,* nos abstendremos de ejercer nuestra función revisora sobre este asunto.

**IV.**

Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari*, según presentado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones